to our next matter, which is Whitman v. United States. Good morning, Your Honors. Dennis Reardon and Alexandra Shapiro for Petitioner Appellant Doug Whitman. We have briefed, and I am fully prepared to argue, the central claim here, which is that Mr. Whitman's conviction is invalid under this Court's Newman decision, and that he is perfectly entitled to raise that claim. It's not procedurally barred from raising it before this Court on 2255 attack. But if I proceed in that direction, I don't mean to suggest that I'm ignorant of the fact that this Court might consider that there's an elephant in this room, which is the fact that the United States Supreme Court heard an argument yesterday in the Solomon case and is going to issue its first major decision in 20 years on the meaning of insider trading. And I think it's fair to say I've reviewed the transcript. I suspect that members of the Court have as well. That is extraordinarily difficult to draw from what was a heated, spirited argument in which the various members of the Court pressed counsel very hard on both sides of the question. There was one point at page, I think it was, 28 of my transcript in which Justice Alito said neither counsel was offering a solution to what they saw as the thorny problem of how to define insider trading. So as I say, I'm prepared to proceed with the Newman argument. I am aware that this Court may wind up deciding not whether the conviction is valid under Newman and whether it can be procedurally barred, but whether it's valid under whatever decision the Court comes out with in the Solomon case. So with that preface, let me say that the Newman decision of this Court— Although the—for reasons of their own, I take it, the petitioners in Solomon presented for certiorari the question, basically, was Newman right? It's not clear to me that Solomon and Newman are indistinguishable as cases. We're just predicting. It's hard—you never can predict what the Supreme Court is going to do from an oral argument, but just looking at the merits, Solomon is a family case. Newman was not. This is not. But we are a little bit whistling in the wind trying to argue what the law is when we know the Supreme Court is going to give us something. Right. Absolutely, Your Honor. And what you mentioned is the fact that Justice Breyer, Justice Kennedy, Justice Sotomayor all focus very directly on the question of whether families present a unique fact pattern in inside trading law. And it may be that— Well, I must say, I can't understand why that would make a difference. You know, Justice Alito asked the question about, you walk down the street and you see a guy and you say, oh, he looks like a sad sack. I'll give him an inside tip, and there's no benefit to me. I guess I've never understood why I can give inside information to my favorite charity if I couldn't give the proceeds—if I don't get out from under the insider trading law by doing my own insider trading and giving them the money. So I'm not sure I see the difference about family, but they may. Let's assume for the moment that Newman's still is good law. Yes. Thank you, Your Honor. Why don't you talk about procedural default? Because that seems to be a major issue in this particular case. Was not raised on direct appeal. Was probably raised before the district court. Why should we entertain this habeas petition? Well, two reasons, Your Honor. There's no question that the direct—the most important aspect of the Newman decision, which dealt with not simply knowledge of a personal benefit, but knowledge of a potentially pecuniary benefit, was not raised on direct appeal in Mr. Whitman's case. In fact, it really wasn't raised very centrally even in Newman. The court, I believe, asked for supplementary briefing on that aspect of the case, and of the trademark decision in that regard. The reasons are two. One, in the most conventional sense, the government has said and did in its rehearing petition before this court, its unsuccessful en banc petition, that the Newman decision, and that particularly dealing with a potential pecuniary benefit, had no basis, had no root, had no basis in any understanding of securities law up until the decision was issued. It was known to be wrong on occasion. Right. The point is simply that they have time and time again described it as a novel decision. They cite the Bosley case of the United States Supreme Court, in which the court did not hear or refused to hear a collateral claim involving involuntary pleas, and there the court said the claim is simply not novel. It wasn't novel because of Henderson and— What about this case, though? Just getting back to your client, there's plenty of evidence that he was telling his three tippers, boy, you should really give something or pay something to the people who are giving you this information because they don't work for free and we want to encourage more information. There's a lot of that in the record. How you characterize it is important. I know that, but there certainly is a lot here where it wasn't just friendship talk over the fence in the backyard. He kept saying, you know, you should do trips, you should give them cash, stuff like that, right? Well, Your Honor, we're now past procedural default and into the issue of whether the government would have obtained this conviction on the basis of knowledge of pecuniary benefit as opposed to knowledge of a simple friendship. And actual innocence as well. And, Your Honor, I submit to you that there's three essential players here. That as to Mr. Modi, he testified that he never—there was never any quid pro quo. That's count one. He never suggested to Mr. Whitman there was. He couldn't have knowledge because there wasn't a quid pro quo. As Mr. Bala—Mr. Bala apparently did with Rumi Khan say that he was interested in pecuniary benefits. The record is clear that there was no evidence that Rumi Khan ever passed on that knowledge to Mr. Whitman, which is a requirement under Newman that he know that there's a pecuniary or potential pecuniary relationship going on. But let me get to the critical point that you're making, Your Honor, which is that there was a phone call a year and a half, 18 months after the trade in question in which Mr. Whitman—actually, it's exculpatory in this sense. He says on the phone call that there wasn't any pecuniary relationship involved with the Google trade with Samarra Hussein and says there wasn't one and then says, you know, book a book or a trip to Hawaii. He goes on to say, but of course I told her, don't give cash. That's criminal. You'll go to jail for that. So the phone call— Was that what he said or was he—you might get caught doing that? No, he said that he spoke to her and said, don't give cash. That can wind you up in jail. But here's the critical point I want to make about that, Your Honor. The government, in closing arguments, said our cooperators have credibility problems. They specifically said they have an incentive to lie. They said explicitly that Rumi Khan had a lot of problems and she has lied on previous occasions. Conceded that. Then it said, however, as to Samarra Hussein, it is undisputed that there was a friendship. And it was undisputed. Whitman admitted that he knew that there was a friendship relationship. So what the government was saying is, you don't have to get to the question of whether he had a dirty mind in terms of—or knowledge of any pecuniary quid pro quos. Admittedly, our friendship theory, which it fought to get an instruction on, the defective instruction—the instruction later declared defective under Newman—it fought for that. And then it gets to argue to the jury, the friendship is undisputed. So what this court would have to say is that the government fought for the friendship theory, argued that the friendship theory was undisputed, but it can declare with confidence that the jury didn't rely on the friendship theory prohibited by Newman in returning a guilty verdict. Mr. Braden, if despite what you just said, we were to think that the Google tip evidence satisfied Newman—I understand you don't agree with that—but if we thought it did, but that the Marvel one didn't, so that the prejudice issue came out differently in the two cases, what would you want us to do with the appeal? Well, we'd obviously want you to reverse the Marvel conviction, Your Honor. And what—that's what I'm trying to get at. What good would that do you? I think it would have to be remanded for resentencing, Your Honor. Why? Aren't they concurrent counts? That's true, Your Honor. And isn't the forfeiture entirely due to the Google trade? Well, that may well be, but I think that a district court judge could fairly say that, you know, I considered the universe of facts before me, and I considered the fact that there was a conviction on the count one conspiracy, and the court might in that instance come to a different judgment than it did before in terms of the sentence. There's still some portion of the custodial sentence yet to be served in this case, Your Honor. Have we ever done that on collateral attack? I think we may have done it on direct appeal. Have we ever done it on a collateral attack? Well, Your Honor, that's a question that I'd be happy to research and answer, but as— Because otherwise you're just fighting about a $100 assessment, and you're not here for that, I take it. No, but I think—I mean, the point of collateral attack in habeas corpus is custody. I mean, that's its classic form, and we're still talking about custody here. But, Judge, let me make one point clear. I do not—I am not here to argue and have not argued that on the Google count, the evidence is insufficient as a matter of law under Jackson v. Virginia to convict. What I am saying is that the evidence on that count was equivocal. The government basically argued— No, I understand. You're saying there's enough here such that there's prejudice with a correct charge. So in the absence of the correct charge, there's prejudice. That's right. And the government attempts to formulate and says it's clear, it's absolutely clear, that the jury would have convicted even if this error hadn't been committed. That actually isn't the test. The test is whether this Court can say with confidence that the jury did not rely on the erroneous instruction in order to convict. And we submit to the Court, Your Honor, that the government pressed very hard to rely on friendship as its principal theory on which to convict. Am I—over time, I'd ask for a minute or two in rebuttal. You've got two minutes, Mr. Reardon. We'll see. May it please the Court, my name is Sarah Eddy. I'm an assistant U.S. attorney with the Southern District of New York and I represent the United States on this appeal. Mr. Whitman procedurally defaulted a claim that was, in any event, and even under Newman, meritless. Addressing the merits first, and I'll get to the procedural default, which we think really disposes of this at the outset, but the tippers in this case traded their inside information for cash and for valuable market information. Now, I want to just take a moment to walk through some of the evidence on that because I think it has not been fairly characterized here. Ms. Kahn's tippers at Google and at Polycom, they both had cash arrangements, essentially, with Ms. Kahn. And the defense didn't even really dispute that at trial. Mr. Motee's tippers, Sam Meary and Bill Brennan at Marvell, both, in addition, have pecuniary-like relationships with Mr. Motee. Under the Newman definition, this would still qualify. Mr. Brennan, in particular. Now, Mr. Motee testified, not that he had a friendship with Bill Brennan, but that he had just a business relationship. And that Bill Brennan, that Mr. Motee, in exchange for some of this information that he was getting on Marvell, these specific revenue figures and guidance, he said that Mr. Brennan got these analyst reports that Mr. Motee had access to that otherwise Mr. Brennan would have to pay for regarding competitors. So these were the kinds of benefits that are squarely within the test, even that this court adopted in Newman. That's if this case were on direct appeal, Your Honors. The conviction would still have to be affirmed on all counts. But we have this procedural default. What troubles me about that argument is sort of the same thing that troubled me in the earlier case about the Hobbs Act instruction. It's perfectly fine, and I think you're correct, that there was sufficient evidence to sustain these convictions under Newman. But as Mr. Reardon clearly argued, the question is whether an instruction that makes it substantially easier for the government to get a conviction because that sufficient evidence of pecuniary benefit might not be believed and gives the government the opportunity to say to the jury, we have a great case about pecuniary benefits. That's really what was motivating these people. But, as the judge will tell you, you don't even need to go that far because the friendship theory is enough. And you ask the judge specifically to instruct on a theory that makes it easier. Then if that theory turns out to be wrong, you've taken a risk. A couple of points, Your Honor, I'd like to make on that. The first is that the government did not pursue a friendship theory of benefit to the jury. It's correct that the government sought a well-accepted at that time jury instruction on personal benefit that included, I think, maintaining or furthering a friendship as the language. But even Judge Rakoff, at the time that he agreed to give that charge, was questioning whether a friendship theory was really the government's theory. It turned out not to be. If you read the summations carefully, it's clear that the government is referring to these friendships and business relationships. Mostly, some of it is just narrative and explaining the background. But to the extent it's used as argument, it's to make the point that Doug Whitman had knowledge of the benefit. Not knowledge that friendship was the benefit, but knowledge that friendships of this sort between these financial industry professionals and insiders at public companies involved quid pro quos. And that's what you see on that tape, the Wes Wang, December 2008, phone call. Is Mr. Whitman acknowledging his knowledge that these sorts of relationships involve paying off insiders? Not necessarily with cash, but certainly with the kinds of benefits that still qualify under even Newman. You know, nice purse, Hawaiian vacation, nice bottle of wine. All those things. So that's the factual point I want to make there. The standard here, so even if this were a direct appeal, where the issue had been preserved, the standard you would apply is the Nader standard of, you know, would a properly instructed jury, beyond a reasonable doubt, have reached the same result. We would maintain, yes, even that standard is satisfied here. But that's not the standard that applies here. Even if you ignore the procedural default and you go to the question of the standard that applies on habeas review, where you've got a preserved, non-procedurally defaulted claim, you've got the Brecht standard. And the Brecht standard is substantially higher than that. I think it's had to have a substantial and injurious effect on the jury's verdict. That certainly is not satisfied here, where the government did not pursue a friendship theory. And now you get to where we are, which is a claim not even to where we are. So we maintain that there's no cause here that would have excused the failure to raise this claim on appeal. Even assuming you get past that, the prejudice test here is under Frady. And it's that much more stringent prejudice test. It has to, the instruction alone, has to have so infected the trial that it resulted in a violation of due process. Under no analysis of the evidence here can Mr. Whitman satisfy that test. I want to just briefly address the cause question, though. This argument plainly was available to Mr. Whitman. His counsel made it at trial. Other defendants, including the Newman defendants, made it. Is that enough availability? I mean, an appellate lawyer has a problem. If he's got ten possible issues, he's got to decide which ones to go up on. So is availability enough to show, to get over the cause issue? I think it is, Your Honor. I think the law is fairly clear that in order... Even after the government calls it a very novel... There were a lot of adjectives in your rehearing petition that obviously they like to remind us of. You're absolutely right, Your Honor. And the government's view was and remains that Newman is a clear break from established precedent, including Dirks. But this court obviously rejected that view. And if Newman is not a departure in that sense... But if the government, as a lawyer, thought so, why shouldn't their lawyer be entitled to think that, too, even though this court didn't think so? Well, their lawyer didn't think that at the trial court level. At the trial court. But now he's got to decide what to do on appeal. And he's got a lot of issues. And he says, well, I'm certainly not going to waste my 50 pages of brief with an issue that the government says is just so novel that nobody would think about it. Again, Your Honor, I think the futility exception to the cause, or to the procedural default doctrine, is a very high standard. And it really does require that, in essence, the claim have been foreclosed by precedent, and that it would have been futile to pursue the claim. I would also just, if I may... So you're saying Judge Newman's argument is why this was not ineffective assistance, because a reasonable lawyer could decide not to pursue it, but he still made a tactical decision not to pursue it because it was available, and therefore it's not futile. So it's sort of a catch-22. There's a space in between where it is neither cause because it's futile, nor is it cause because it was ineffective assistance, because it was an available argument, but it was one that a reasonable appellate lawyer could decide not to pursue. Your Honor, it was not a catch-22, and that's precisely the phrase that this court used in the McCoy case, which we cite in our brief. There is a distance between futility and, you know, It's just because a lawyer doesn't pursue a claim that had no firm legal support that was ultimately irrelevant to this case. I mean, that's an important factor for the ineffectiveness. It's a deliberate bypass if an appellate lawyer makes a tactical decision not to pursue an available claim, even if that tactical decision is a reasonable one for the lawyer to make. It's not ineffective. But there's a deliberate decision. I made this argument below, but I'm not going to pursue it on appeal. I'm going to pursue a different argument on appeal. I mean, even before Frady, even when the standard was much more favorable to defendants, the standard was deliberate bypass, a tactical decision to not raise this argument. But, Your Honor, I think... You don't even remember that, because that was Justice Brennan, and nobody pays attention to that stuff anymore. But that was the favorable standard to defendants, was it has to be a deliberate bypass before it's waived. And what you're saying is that that's what this looks like. It's a decision not to raise an available argument because you think some other argument will suit you better. I think that in this case, there was no... You can't say that it was incompetent not to raise this claim on appeal. Was it because of the law at the time, or was it because of the facts of this case? Perhaps the decision was, there's so much evidence of pecuniary benefit, we're not even going to prevail on a bad charge on direct appeal. Is that what you were saying by relevance? Yes, Your Honor, that is what I meant to say. You've said it much more artfully. That is, I think, the decision that was made here. This was not a case in which to press a Newman-style benefit instruction as a claim of error. It just was not the government's theory of the case. If we thought there was cause, but that the prejudice issue came out differently, do you have a view of the suggestion Mr. Reardon made that we'd have to remand even though this is collateral attack and there are concurrent sentences? So, I just want to make sure I understand Your Honor's question. It's if you determine that... If we thought that the prejudice was shown with respect to only one of the transactions? I think that the court would then have to examine whether there really was ultimate prejudice. I'm not... No, I'm saying if we split the difference, that there was prejudice with respect to one transaction, not with respect to the other. I think if you found that the prejudice standard under Frady was satisfied, such that this resulted in a violation of due process with respect to count one, the Marvell count, I'm not sure the government would object that some relief should be granted. What? I'm not sure the government would object that some relief ought to be granted in those circumstances. What relief? I appreciate... A resentencing. Would it be a remand for resentencing? I suppose that's what it would be, yes, Your Honor. So that the fact that there are concurrent sentences still gets you a remand, even on collateral attack? I'm not certain of the answer to that, but as I stand here right now, I don't think the government would object to a remand for resentencing if there really was a violation of due process with respect to one of the counts. Yeah, in a post-guideline world, even in a discretionary guideline world, judges are encouraged to look at the totality of the conduct and what count it is. You know, everybody gets concurrent counts for all three because there was a cumulative wrongdoing in three instances, and maybe it would look different if there were... Maybe it wouldn't, but maybe it would look different if there were only two instances, you know, involving less money and whatever else, because one of the counts falls out. I think that's the argument, and again, I'm not sure the government would be contesting a remand under those very unusual circumstances. And what's your view, which I take it was sort of Mr. Reardon's point, whether we should wait for the Salmon decision? Your Honour, I don't think that the Court needs to wait for the Salmon decision at all. As we've argued, this entire case has been argued, on the understanding that Newman remains good law in the circuit, and if Newman... If there was no cause for the default, then you win anyway, because they need to show cause and prejudice. So almost no matter what the Supreme Court says in Salmon, you could win on that ground, but the ground of prejudice and the ultimate merits are things that the Supreme Court may upset the applecart on. Right? I mean, in other words, I understand your position is that you win on those, but it seems to me there's a distinction between the different ways, the different arguments you make. Some of them are totally independent of what the Supreme Court ultimately says about Newman. Others may look different and may look much better for the government if the Supreme Court disapproves of Newman, for example. That's certainly the case. Yes, they could look much better for the government. I don't think there's a world in which they would look worse for the government. Thank you. Mr. Reardon, you have a couple of minutes. Your Honours, on the default question, the government, in its rehearing petition in Newman, said what Newman does is it takes activity that was thought to be criminal and it's no longer criminal. That's a substantive change in the law. It hasn't responded to the fact that Montgomery says a court has no authority to leave in place a conviction or sentence that violates a substantive... You said that in the context of a preserved claim. Your Honour, I don't think that's true. I don't think that it came up on collateral attack. And the Louisiana court had said that it would refuse to hear the collateral attack because it only heard claims like this on direct appeal. And the Supreme Court... I don't see how a conviction can be viewed as void for the purpose of one procedural default doctrine and not void for the purpose of another. So I submit that... If one issue is retroactivity and the other issue is cause those are different questions, aren't they? They are, Your Honour, but this is my point exactly. A conviction is void, can't be void for the purposes of retroactivity but not void for the purpose of a cause and effect test. And I submit, Your Honour, that the court also has to deal with the fact that in Johnson when the Supreme Court declared the residual clause of the Armed Criminal Act vague and unconstitutional, Justice Scalia had written opinion after opinion saying that it was unconstitutional in previous cases considering the same fact. That did not stop the court in Welch from agreeing that all of those claims can now be raised on collateral attack. So I submit that Montgomery and Welch raised major problems for the notion that this can be defaulted as not sufficiently a novel as to be raised on collateral attack. And Judge, I would just submit to you that the evidence of Mr. Whitman's knowledge of a quid pro quo there was... The government suggests that there was a money arrangement. No money ever paid... The insiders never got any money. There was evidence that two of them were interested in money. They never got any. But the critical question is what was the evidence that Mr. Whitman knew about that and the government is left to argue that that conversation and it's one conversation suggests it's circumstantial evidence because he doesn't say on there I knew that there was an arrangement. In fact, he says there wasn't an arrangement. What he says is these sorts of things gifts go on and that's circumstantial evidence that in this case he thought there was an arrangement. I'm puzzled about the knowledge issue. I thought the judge in this case instructed the jury properly about knowledge. The question is whether there was the quid pro quo or not of the type that is required. Your Honor, he instructed them that there has to be knowledge of a personal benefit. But because he gave a defective instruction as to friendship being inadequate exchange and this court has held it has to be concrete, tangential and pecuniary in nature the knowledge element that is required by Newman is the knowledge It's actually kind of a funny situation because Whitman believed, it seems to me quite clearly as to Google that there was a financial arrangement because he says to Ms. Conlater you're supposed to be giving money and when she says well, I don't know, I'm not going to do that because I could get in trouble he says, don't tell me that, Ms. Google you've been dirty before, is what he's saying so he seems to think there was even if there wasn't and the problem is maybe there wasn't in fact a financial benefit. Well, the fact is that that Ms. Con did not tell him that there was any expectation on the part of Samara Hussein until well after the actual transaction so he did not have that mens rea at the time and if you I mean it certainly seems like that's a thin reed to say no reasonable jury could find that he knew about something if it did occur when he thinks it occurs when he's been told about it after the fact he doesn't say at that point, there's no evidence that he says really? Your Honor, again, I am not arguing that no reasonable jury could find this because unlike the Modi claim which I do think the evidence was insufficient under Newman we haven't raised that claim here what I am saying is that at A327 page 296, the government in closing says that as to Samara Hussein it is undisputed that there was a friendship there that they were good friends so it is impossible for the government to argue that it didn't put the friendship theory there, it said it was undisputed that's a long way away from inferring from those conversations that the required mens rea existed at the time of the transactions thank you very much. Thank you Mr. Rurdin the rest of our cases are on submission, we'll reserve decision on the Whitman case, the rest of the cases are on submission so I'll ask the clerk to adjourn court Court is adjourned